Good morning, Justices. My name is Mary Lou Hillberg, and I'm honored to be here on behalf of Mr. Mays. Justices, if I go to In-N-Out and I go up to the counter and I order a burger and fries, I want a burger and fries. I don't want to be asked do I want a burger or fries. I expect both. Mr. Mays said to counsel or said to the police, can you call my stepdad and have him have my lawyer come down here? And he said that not once, but he said it twice. He asked for an attorney unequivocally, and he asked for a polygraph. The police ignored his request for counsel and set him up with a fake polygraph that was designed to have him confess. The law, especially with this Court's decision in Sessions, is very clear that once somebody makes a clear, unambiguous request for counsel, it is a bright line. The police are to stop. They are to stop the questioning then and there. They are not to pass go. They are not to collect $200. They are not to offer a fake polygraph that is designed to extort a confession. It is not supposed to be a race to see how fast the police can get the defendant to change his mind from his request for counsel. The rule enunciated by Sessions and following the long line of jurisprudence after Harrington v. Riker is that no fair-minded jurist could disagree that this was a clear, unambiguous request for counsel. The request that Mr. Mays made not once but twice was even clearer than the request made by Mr. Sessions. To begin with, when Mr. Sessions asked for his daddy and his to come with his attorney, Mr. Sessions was legally an adult. Mr. Mays is a 17-year-old juvenile. The only way he could get an attorney was to have a parent pay for one or have the court appoint one. Obviously, he hadn't been to court, so he was dependent on his parent to get the lawyer for him, which the parent had done. And he asked him twice. The question is, would a reasonable offer, a reasonable police officer understood what Mr. Mays said? And the answer to that is unequivocally yes, because the Detective Hosted, a few minutes later, said, oh, did you really want counsel or did you want the polygraph? And Mr. Mays, of course, made the very bad choice of asking for the fake polygraph. Kagan, did the district court find prejudice? No, the district court did not find prejudice. I'm just looking at the time on the clock and wonder if you could address prejudice. I would be glad to. I think that the district court's analysis of the prejudice fails primarily because he considered the testimony of Mr. Mays a trial, which Smith is abundantly clear that you can't do that. It's kind of the fruit of the poisonous tree. That is the primary error in finding prejudice. The other thing I'd like to point out to the Court is that there is no factual dispute here, but that the sweatshirt, the gray sweatshirt in the videotape that everybody looked at and said, oh, yeah, I know Mr. Mays wears a gray sweatshirt all the time. The sweatshirt in the videotape was not Mr. Mays' sweatshirt. Mr. Way's sweatshirt had a South Pole logo on it. And Mr. Mays said, I don't got no other clothes. He didn't have more than one gray hooded sweatshirt. What about the ñ I think she was a neighbor. Is it Schellenberg? Yes. What about her testimony? Her testimony was primarily she said, I recognize the sweatshirt. He wears it all the time. I thought it was the wrong sweatshirt. Then she said, yeah, it looks like him. And even if it was him present at the scene, it doesn't necessarily prove that he was the shooter. She was interviewed privately, and I think that was audiotaped. Is that right? That was audiotaped. And then there was a conditional examination because it was held that she was too fragile emotionally to testify at trial. Although she did try to recant her identification. Right. And she said that he had said he had been there. That's different than saying this is the guy that shot. Her testimony was all over the place. It was the testimony ñ the statement that she gave to the officer was directly contravened by her testimony in the conditional examination. She wasn't sure. She had ñ and we know that she had emotional issues because she couldn't testify in court. It is not sufficient in and of itself to sustain the verdict in this case, given that the other identification was uncertain by all the eyewitnesses. They ñ the ñ I can't pronounce her name, but the girlfriend of the victim said that the shooter was about 5'1", Mr. Mays is about 5'7". She swore he had gold teeth. Mr. Mays has never had gold teeth. She swore he shot with his right hand. Mr. Mays is left-handed. The other witnesses said, I'm sure, maybe a 5 out of a scale of 10. There are ñ there are serious questions about the identification in this case, especially since it all revolves around the gray-hooded sweatshirt, which is indeed in the same gray-hooded sweatshirt. And the court of appeal noted that if you want a citation to it, it's on footnote 4 on page 162 of the published opinion, or it's in the first volume of the excerpts of record on page 57. But it's the people stipulated it was the wrong sweatshirt. The ñ there was no physical evidence. There was no ñ no blood associated with the shooting found on Mr. Mays. They never found a gun. The photographic identification evidence was equivalent. First, she ñ Narcisi, I guess you're saying, selected somebody else. Then they select ñ she selected Mr. Mays. The first one didn't show up. The prosecutor at trial repeatedly came back to Mr. Mays' statements saying, this is the pivotal piece of evidence that proves beyond a reasonable doubt that he's guilty. And his opinion that this was critical should be given a great deal of weight by the court. This is not a reguessing the facts. This is simply assessing the question of prejudice with the right standards, taking out Mr. Mays' testimony at trial, which is clearly not part of the equation via the Smith and Harrison. Do I have time for rebuttal? Yes, please. Thank you. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. There ñ it is important to distinguish between ambiguity and equivocation. The latter involves whether one is decisive, not whether one is clear. In this case, we haven't really argued, and I still don't see a strong basis for arguing, that the initial statement was ambiguous. And I'm not even sure it was equivocal on its face. The problem is, right afterwards, and not in response to questioning, he indicated that he wanted to talk before counsel got there. So assuming that he ñ Where did he say, I want to talk before counsel got here? I'm sorry? Where did he say, I want to talk before counsel got here? He said it by talking, knowing that counsel wasn't there. He makes a statement regarding counsel, and then before the officer can say anything, he cuts ñ Well, the officer did say something. Didn't he ask him about your stepdad? Well, that appears to be one statement he's making, yes. My stepdad got a lawyer for me. Okay. So what do you want to do with him? I'm going to ñ can you call him and have my lawyer come down here? That appears to be an unambiguous request. The officer then only says something unintelligible and immediately ñ Counsel, counsel, right there, isn't that really problematic for us? Forgive me for interrupting, but ñ Sure. But right there, I think you agree. I think you just did agree. The Mays made an unequivocal request right there for counsel, and then we don't know what the response was. That's true, but we do know the court listened to the tape, and there is less than half a second, and he cut off the officer. No matter what the officer was saying, what the defendant says is not in response to it. Well, what if the detective said yes? If he said yes, then I don't see a problem, because the defendant ñ Well, let me be clear. Let's assume the officer did understand that, and I think he may well have. The problem is, what does an officer do when, in the very next second, the defendant makes an assertion regarding innocence? At that point, the defendant knows there is no attorney there. So whatever the defendant indicated, yes, I do want him here, before he goes to court, in the very ñ virtually the next second, the defendant chooses to talk, despite the fact that, obviously, counsel is not there. That is a fair example of being indecisive about whether you want an attorney present before you continue the discussion. So what is your position? Is this equivocal or ambiguous, or what is your position? It is equivocal. It reflects indecisiveness, because at one point, you do indicate you want an attorney there before discussion, and in the very next instant, you start talking about it, despite the fact that counsel is not there. Under that circumstance, would there be an obligation to clarify? There is no Supreme Court case saying there is any obligation to clarify at all. So, no. I think I understand your position. You've answered my question. Thank you. There is ñ I think the brief is generally adequate on the issue, which was not considered by the State court, which was whether or not there was a reinitiation, even assuming that we had an equivocal request. And I also think the State court decision is more than adequate on the question of prejudice. It should be noted that the State court found not merely that it was harmless excluding his testimony, but that you actually didn't have to exclude the testimony because he would have testified even without the admission of his statement. So there was ñ You're aware that the burden of showing that is on the government, right? The burden ñ That he would have testified. Yes. And the California ñ How did the government carry its burden of showing that he would have testified anyway? The record persuaded the California court of appeal that in light of the statement that was admitted that he had already made to his friend Schallenberg, they didn't have any difficulty concluding that he would have testified anyway, even had they not admitted his duplicated statement. Because they were so certain that the conviction was certain? Is that the explanation? I actually ñ no, Your Honor. The jury would clearly, undoubtedly, unquestionably have convicted him based on the evidence. They are clear that it would ñ they would have done the same decision based on the admission. Because, again, the only thing he admitted was being present. So the discussion about the shirt and so on, all that does is place him there at the scene. So while the prosecution indeed concedes that's not the shirt, the only thing that his admission did was place him there. And that ñ and he did indeed admit that to Schallenberg. Schallenberg said that before she was in court, and in court she repeated that in her conditional examination. He admitted he was there. That is the only thing that the prosecution gained. Didn't he say I was the person in the gray sweatshirt in the photo? I'm sorry? Didn't he say I was the person in the gray sweatshirt in the photo when he testified or when he made his admission? After being presented with a photocopy. I think that may be correct. But given ñ there's no way ñ certainly a State court could be quite certain that a jury is not going to think it's the same gray sweatshirt when the prosecution has conceded that it's not. But what I'm saying to you is that you construe the court of appeals decision as meaning that he would have had to testify because he would have been convicted had he not testified. No. It is that he would have still made the same decision. In other words, his decision to testify was not prompted by the admission of his statement. Why, if the case was not a clear case for conviction, do you say that he would not have testified and that his lawyer wouldn't have told him they haven't made out a case, don't testify? How do we know that? Because he still had the problem of having admitted that he was present, which is what he told his friend. The same problem presented by his admission to police was presented by his admission to Schallenberg. In other words, had they not admitted his test ñ his statement to the police, the jury still would have heard that he had previously admitted being on the scene because that ñ because they heard that from Schallenberg. But what about the fact that the admission was ñ the evidence was he was there and that his brother was there as well? He wasn't the only one on the scene. I don't think that there's any ñ I don't think he's ever said anything to the contrary, whether in his police statement or his statement to Schallenberg. Right, counsel, but it goes to Judge Reinhart's question about how is there certainty that he would have testified. And your answer to that question was that he may have admitted that he was present. But he didn't admit he was the only one present and he wasn't the only one present. That's true in neither statement. The point is he would have faced the exact same prosecution strain, because whether or not the prosecution relied on his admission to police, they already had his admission to being present. He didn't ñ he didn't ñ But why do you think it necessarily follows that he would have decided to testify? There's nothing in the record that indicated that he affirmatively said, I would have testified anyway, or his counsel said that, right? That's true, but ñ So, you know, we have ñ we have a lot of cases where there's a strong prosecution case, and for whatever reason, the defendant chooses not to testify as a tactical matter. So this is just presumption on the part of the court of appeal, right? It's not presumption, Your Honor. It's inference, one that they are indeed inclined to draw. But it gets back to Judge Reinhart's question. How did the government sustain its burden? They do it by providing a record which persuades the court. The record here showed that the only ñ there was no logical reason for him to be prompted by his police statement that wouldn't have prompted him to do so given that the exact same statements were made to his friend and already before the jury. The police statements didn't add anything that was not already there by Schallenberg's statements. That's why. It was simply ñ It's very powerful to a jury to say he confessed to the police. He was given ñ read his rights. He confessed to the police. And then he's got to come up and explain that. He might well tactically say, you know, have another explanation. I just ñ he did not confess. I guess from a trial lawyer's point of view, if I've got a confession that my client has given, that tends to make me want to say, okay, now you have to testify as opposed to, well, I don't think the evidence is sufficient. He did not confess to the police. Well, no. I mean, I'm just talking about ñ He admitted being present. Right. And it doesn't matter whether he admits it to the police or his close friend. In fact, one argument could be made that it's maybe even more reliable when he admits it to his close friend. And it's not for this Court to decide that de novo. It's for the State court to. There's nothing unreasonable about their conclusion, even if you might draw a different conclusion. Except we're both looking at the same record. This wasn't the trial court making a finding of fact, correct? It's looking at a cold record and drawing inferences. But there is no exception to the fact that they are the decider, Your Honor, and not this Court. So even if you might think you're in just as good a position as a State court under AEDPA, their ruling is what matters. Thank you. Well, they didn't say anything about any kind of a burden. Of course they did. They said proof beyond reasonable doubt, Your Honor. They said what? I believe they noted that they had to prove that it had to be proven beyond reasonable doubt, the lack of prejudice. They find, it's at page 31 of my brief, to 32, the erroneous denial of the motion to suppress is subject to harm if there are analogous beyond the reasonable doubt standard of Chapman. So, yes, they did. I think, though, to Judge Reinhart's point, there's nothing in this California court of appeals decision that says the government met its burden on this issue. So we don't know whether they considered whose burden it was. You're supposed to presume that the State court got the law right, though, Your Honor. Even if they didn't. You're arguing with me instead of answering my question. I mean, I understand our presumptions. But it's true that it's not in there, isn't it? I just want to be correct. No, it's not true. My brief quotes the opinion. Well, where is it in the opinion I've got in front of me? The very first, it's at the beginning of the discussion of presence. Even assuming for the sake of argument. What page do you know? Or give me a general. I just want to make sure we're on the same page. My quotation goes from ER page 97. So I guess we'd start at page 97 of the excerpt of the record. Okay. And say at the very beginning what standard is. Yes. First of all, volume 1 of the ER, page 97. I've got it. I see I've exceeded my time. I don't have time. Thank you, Your Honor. Why don't you address the prejudice issue? Again, I would point out that the Court looked at and weighed his testimony in the question of prejudice, and that is completely erroneous under Harrison and Smith. The the the. Where do you say they weighed his testimony in the question of prejudice? They considered his testimony. They considered his testimony at trial in determining that his confession, the omission of his confession, was not erroneous. They looked at that. They said, look at what he said at trial. And that's clearly not what you can do under Smith and Harrison. The other question that the Court brought up that I'd like to address briefly is that you can't know that he would testify but for just because he had a statement to Schallenberg, because Schallenberg's testimony contradicted what she said to the police. There's a lot of case law that talks about the compulsion to testify once you've confessed to the police. There's no case law that says that there's a compulsion to testify because a witness has made a statement to the police that I've ever seen. Schallenberg didn't change her testimony on this point, did she? She didn't change her testimony about him telling her he was there, did she? No. No. No, she did not. But that's still, as the Court pointed out, there was he was not the only one there, and it wasn't an admission to being involved in the shooting. We don't know how many people there were there, but there were at least two on camera. So to your point on prejudice, now I have the reference in front of me. They go through and they say, in this case, let's see, we question whether it makes sense to speculate that the defendant might not have testified if his interrogation statements had not been admitted. And they go on to say, in this case, we can leave the answers to these questions for another day. But here's the critical point that he cites, is that thus we are confident that the defendant would have testified even had his interrogation statements not been admitted into evidence, because he had to deny the strong independent evidence linking him and his gray sweatshirt to the crime. So what do we do with that? Well, the problem is, is that it's not the gray sweatshirt that he had that was linked to the crime. But he was asked whether he was the guy in the gray sweatshirt in the photo, and didn't he say yes? He said I was at the scene. Yes, he said he was at the scene. Didn't he admit to being the person in the gray sweatshirt? It's a different question. He says a couple of different things. He says at one point, yes, I was at the scene and I have a gray sweatshirt. And at another point, he says that's not my gray sweatshirt because it doesn't say South Pole. But wasn't he shown a still photo and said that that was him in the gray sweatshirt? I think he was shown the way I read the record is he was shown more than one photo, and one photo where you couldn't see the logo, he said, yeah, that looks like me. It looks like my sweatshirt. And then in another photo where you could see that it didn't have the logo, he said that's not my sweatshirt. Okay. So I think you and I read the record the same way. And understanding that, I'm just waiting for the answer to Judge Thomas's question. Which is that the court found that he would have had to testify anyway? That's what we're trying to flesh out. I don't think that – I think that is based entirely upon speculation. There is absolutely no support in the record for that. There's no support in the case law that says because of somebody else's statement, the defendant would have to testify. It is – the case law talks about when there is a statement to the police, it's compelling forcing the person to testify, not because somebody else makes the statement. There's absolutely no case law I've ever seen that says that. And I believe that the court was out of bounds, is a polite way of saying it, by making that assumption. Because it's based entirely on speculation. It can't be supported. And as such, it's not subject to the deference that Harrington and 2254 require from this Court. Thank you, counsel. Thank you. The case is adjourned. It will be submitted.
judges: Reinhardt, Thomas, Christen